ALINA HABBA
United States Attorney
ANGELA JUNEAU
DAVID INKELES
TASHA BRADT
ANDREW BOCCIO
Assistant United States Attorneys
970 Broad Street, Suite 700
Newark, NJ 07102
(862) 240-2409
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| D.R.M., on his own behalf and on behalf of his minor child, J.J.R.S., <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> *Defendant.* | HON. KATHARINE S. HAYDEN, U.S.D.J. <br> HON. STACEY D. ADAMS, U.S.M.J. <br><br><br> Civil Action No. 25-696 (KSH)(SDA) <br><br><br> **Return Date: August 18, 2025** |

## UNITED STATES' BRIEF IN SUPPORT OF
## A MOTION TO DISMISS UNDER RULE 12(b)(1)
## OF THE FEDERAL RULES OF CIVIL PROCEDURE

On the Brief:

ANGELA JUNEAU
DAVID INKELES
TASHA BRADT
ANDREW BOCCIO
Assistant United States Attorneys

## TABLE OF CONTENTS

Preliminary Statement ................................................................................................ 1

Legal Framework ........................................................................................................ 3

    I. Statutory Framework for Noncitizens Arriving at U.S. Border ........................... 3

    II. The *Flores* Agreement Governing Minors in Immigration Detention ................ 4

    III. ICE's Capacity to Detain Family Units in March 2018 ................................. 5

    IV. Statutory Framework for Housing Unaccompanied Noncitizen Minors ........... 6

Factual Background And Procedural History ........................................................... 7

    I. Plaintiffs' 2018 Entry at the Hidalgo Port of Entry ................................................ 8

    II. The "Zero Tolerance" Policy for Violations of 8 U.S.C. § 1325(a) ...................... 9

    III. Plaintiffs Administrative Claims and Procedural History .............................. 11

Standard of Review ................................................................................................... 12

Legal Argument ........................................................................................................ 13

    I. The Court Lacks Subject Matter Jurisdiction Under The FTCA ....................... 13

        A. Plaintiffs Failed to Exhaust Their Medical-Malpractice and
        Conditions-of-Confinement Claims ................................................................. 13

        B. The Discretionary Function and Due Care Exceptions to the FTCA
        Bar Plaintiffs' Exhausted Claims .................................................................... 16

          1. The Discretionary Function Exception Bars Plaintiffs' Family-Placement
          Claim .............................................................................................................. 18

            a. Plaintiffs' Family-Detention Claim Fails ..................................................... 19

            b. Plaintiffs' Foster-Care-Placement Claim Fails ............................................ 22

            c. Plaintiffs' Tracking-System Claim Fails ....................................................... 22

            d. Plaintiffs Cannot Overcome the Discretionary Function Exception
            Through Allegations of Unconstitutionality ..................................................... 24

          2. Plaintiffs' Claim Regarding the Transfer into ORR Custody Fails ............. 28

        C. Alternatively, the Court Should Dismiss Plaintiffs' Emotional Distress
        Claim Because the FTCA Does Not Authorize Systemic Tort Claims ................ 31

        D. Alternatively, Other FTCA Exceptions Bar Plaintiffs' Unexhausted
        Claims Arising From Their Alleged Conditions Of Confinement ...................... 33

          1. The Discretionary Function Exception Bars Plaintiffs' Conditions-of-
          Confinement Claim .......................................................................................... 33

2. Plaintiffs' Conditions of Confinement Claim Is Barred to the Extent it Sounds in Constitutional Tort .............................................................. 34

II. Plaintiffs Fail to State a Claim Under Texas Law, Depriving the Court of Jurisdiction ............................................................................................... 34

A. Plaintiffs Fail to State an Intentional Emotional Distress Claim (Count I) ... 35

1. Plaintiffs' Separation Was Not the Result of Any Policy. ............................ 36

2. Plaintiffs' Separation Was Not Extreme and Outrageous. ........................... 37

B. Plaintiffs Fail to State a Negligence Claim (Count II) ................................... 38

1. Texas Does Not Recognize a Claim for Negligent Infliction of Emotional Distress. ............................................................................................................... 38

2. Plaintiffs Fail to Allege a Duty Related to Their Separation ....................... 39

3. Plaintiffs Fail to State a Claim for Development of a Tracking System. ....... 41

C. Plaintiffs Fail to State a Loss of Consortium Claim (Count III) .................... 41

D. Plaintiffs Fail to State a Claim for Tortious Interference with Familial Relationships (Count IV) ..................................................................................... 42

E. Alternatively, All of Plaintiffs' FTCA Claims Fail Under Texas Law Because the Claims Challenge Privileged Conduct .............................................. 43

Conclusion .................................................................................................... 45

# TABLE OF AUTHORITIES

## *Cases*

*Accardi v. United States,*
   435 F.2d 1239 (3d Cir. 1970)................................................................. 29

*Adams v. United States,*
   420 F.3d 1049 (9th Cir. 2005) .............................................................. 31

*Andrade v. U.S.,*
   116 F. Supp. 2d 778 (W.D. Tex. 2000) ................................................ 44

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................. 35

*Ashish v. Att'y Gen. of U.S.,*
   490 F. App'x 486 (3d Cir. 2013) ........................................................... 4

*B.Y.C.C. v. United States,*
   No. 22-6586, 2023 WL 5237147 (D.N.J. Aug. 15, 2023) ............... passim

*Baer v. United States,*
   722 F.3d 168 (3d Cir. 2013)................................................................. 18

*Bailor v. Salvation Army,*
   51 F.3d 678 (7th Cir. 1995) ................................................................. 21

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................... 26, 35

*Bill Wyly Dev., Inc. v. Smith,*
   680 S.W.3d 679 (Tex. App. 2023)........................................................ 32

*Bivens v. Six Unknown Fed. Narcotics Agents,*
   403 U.S. 388 (1978) ............................................................................. 34

*Borquez v. United States,*
   773 F.2d 1050 (9th Cir. 1985) ............................................................. 29

*Boyles v. Kerr,*
   855 S.W.2d 593 (Tex. 1993) ................................................................ 39

*Brownback v. King,*
   592 U.S. 209 (2021) ............................................................................. 35

*Browning-Ferris Indus., Inc. v. Lieck*,
    881 S.W.2d 288 (Tex 1994) ................................................................. 42

*Bunikyte v. Chertoff*,
    Nos. 07-164, 07-165, 07-166, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ............. 5

*C.D.A. v. United States*,
    No. 21-0469, 2023 WL 2666064 (Mar. 28, 2023) ................................................... 38

*Calderon v. United States*,
    123 F.3d 947 (7th Cir. 1997) ................................................................. 24

*Campos v. United States*,
    888 F.3d 724 (5th Cir. 2018) ................................................................. 23

*Chapa v. Traciers & Assocs.*,
    267 S.W.3d 386 (Tex. App. 2008) ............................................................. 39

*CNA v. United States*,
    535 F.3d 132 (3d Cir. 2008) .............................................................. 12, 13, 17

*Cohen v. United States*,
    151 F.3d 1338 (11th Cir. 1998) ............................................................... 21

*Comm. Of Cent. Am. Refugees v. I.N.S.*,
    795 F.2d 1434 (9th Cir. 1986) ............................................................... 19

*Common Cause of Pa. v. Pennsylvania*,
    558 F.3d 249 (3d Cir. 2009) ................................................................. 12

*Courts v. United States*,
    No. 15-7303 (MLC), 2016 WL 4521687 (D.N.J. Aug. 29, 2016) ...................... 13, 17

*Creditwatch, Inc. v. Jackson*,
    157 S.W.3d 814 (Tex. 2005) ................................................................. 36

*D. Houston, Inc. v. Love*,
    92 S.W. 3d 450 (Tex. 2002) ................................................................. 40

*D.J.C.V. v. United States*,
    687 F. Supp. 3d 423 (S.D.N.Y. 2023) .......................................... 21, 25, 28

*Dalehite v. United States*,
    346 U.S. 15 (1953) ................................................................. 29

*Daniels v. United States*,
    No. 20-3893, 2021 WL 2327856 (E.D. Pa. June 1, 2021) ........................ 31

*Davis v. Carlson,*
   837 F.2d 1318 (5th Cir. 1998) ............................................................ 40

*DeMolick v. United States,*
   No. 22-1973, 2023 WL 3562979 (3d Cir. May 19, 2023) ................................. 35, 45

*Dillard Dep't Stores v. Silva,*
   106 S.W.3d 789 ........................................................................ 37

*DHS v. Thuraissigiam,*
   591 U.S. 103 (2020) ..................................................................... 3

*Donaldson v. United States,*
   281 F. App'x 75 (3d Cir. 2008) .......................................................... 33

*Dupree v. United States,*
   247 F.2d 819 (3d Cir. 1957) ............................................................. 29

*FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.,*
   592 F.2d 364 (7th Cir. 1979) ............................................................ 29

*FDIC v. Meyer,*
   510 U.S. 471 (1994) .................................................................... 34

*Flores v. Lynch,*
   828 F.3d 898 (9th Cir. 2016) ........................................................... 4, 5

*Floyd v. United States,*
   No. 22-1229 (RMB), 2024 WL 3064671 (D.N.J. June 20, 2024) ....................... 14, 15

*Floyd v. United States,*
   No. 22-1229 (RMB), 2024 U.S. Dist. LEXIS 108865 (D.N.J. June 20, 2024)......... 24

*Gandarillas- Zambrana v. BIA,*
   44 F.3d 1251 (4th Cir. 1995) ............................................................ 19

*Garza v. United States,*
   881 F. Supp. 1103 (S.D. Tex. 1995) ..................................................... 38

*Gould Elecs. Inc. v. United States,*
   220 F.3d 169 (3d Cir. 2000)............................................................. 12

*Hardy v. Mitchell,*
   195 S.W.3d 862 (Tex. App. 2006) ........................................................ 42

*Harrison v. Fed. Bureau of Prisons,*
   464 F. Supp. 2d 552 (E.D. Va. 2006) ................................................... 24

*Hart v. O'Brien*,
 127 F.3d 424, (5th Cir. 1997) ................................................................. 37

*Helena Lab'ys Corp. v. Snyder*,
 886 S.W.2d 767 (Tex. 1994) ................................................................. 42

*Hinojosa v. City of Terrell*, Tex.,
 834 F.2d 1223 (5th Cir. 1988) ............................................................. 43

*Hoffman-LaRoche Inc. v. Zeltwanger*,
 144 S.W.3d 438 (Tex. 2004) ................................................................. 35

*Hunter v. Bryant*,
 502 U.S. 224 (1991) ............................................................................... 28

*Jennings v. Rodriguez*,
 583 U.S. 281 (2018) ................................................................................. 3

*K.O. v. United States*,
 No. 20-12015, 2023 WL 131411 (D. Mass. Jan. 9, 2023) ...................... 21

*Kalina v. Fletcher*,
 522 U.S. 118 (1997) ............................................................................... 37

*Karkalas v. Marks*,
 845 F. App'x 114 (3d Cir. 2021) ............................................................. 12

*Kristensen v. United States*,
 993 F.3d 363 (5th Cir. 2021) ................................................................. 40

*Kroger Tex. Ltd. P'ship v. Suberu*,
 216 S.W.3d 788 (Tex. 2006) ............................................................. 35, 36

*Lackner v. United States*,
 No. 22-4951 (RMB), 2025 U.S. Dist. LEXIS 14623 (D.N.J. Jan. 28, 2025)............ 33

*Lang v. Sauers*,
 529 F. App'x 121 (3d Cir. 2013) ............................................................. 34

*Lee v. United States*,
 No. CV1908051PCTDLRDMF, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) ......... 32

*Lehman v. Nakshian*,
 453 U.S. 156 (1981) ............................................................................... 13

*Lichtman v. United States*,
 316 F. App'x 116 (3d Cir. 2008) ............................................................. 31

*Lightfoot v. United States,*
    564 F.3d 625 (3d Cir. 2009) ..................................................................... 12

*Lipsey v. United States,*
    879 F.3d 249 (7th Cir. 2018) .................................................................... 21

*Maliandi v. Montclair State Univ.,*
    845 F.3d 77 (3d Cir. 2016) ....................................................................... 12

*McNeil v. United States,*
    508 U.S. 106 (1993) ................................................................................. 14

*Medina v. City of Philadelphia,*
    219 F. App'x 169 (3d Cir. 2007) .............................................................. 14

*Mendez v. Poitevent,*
    823 F.3d 326 (5th Cir. 2016) .................................................................... 44

*Merando v. United States,*
    517 F.3d 160 (3d Cir. 2008) ............................................................... 18, 19

*Mitchell v. United States,*
    225 F.3d 361 (3d Cir. 2000) ..................................................................... 23

*Molzof v. United States,*
    502 U.S. 301 (1992) ................................................................................. 16

*Ms. L. v. U.S. Immigr. & Customs Enf't,*
    302 F. Supp. 3d 1149 (S.D. Cal. 2018) .................................................... 27

*Newsham v. Transp. Sec. Admin.,*
    No. 08-105 (FLW), 2010 U.S. Dist. LEXIS 17496 (D.N.J. Feb. 26, 2010) ............. 23

*Ochran v. United States,*
    117 F.3d 495 (11th Cir. 1997) .................................................................. 31

*Pelayo v. 24 Hour Fitness USA, Inc.,*
    No. 19-1747, 2019 WL 6686702 (S.D. Tex. Nov. 21, 2019) .................... 39

*Peña Arita v. United States,*
    470 F. Supp. 3d 663 (S.D. Tx. 2020) ....................................................... 21

*Powell v. United States,*
    233 F.2d 851 (10th Cir. 1956) .................................................................. 29

*Rathod v. Barr,*
    No. 20-161, 2020 WL 1492790 (W.D. La. Mar. 5, 2020) ........................ 40

*Rayonier Inc. v. United States,*
    352 U.S. 215 (1957) ......................................................................... 31

*Reagan v. Vaughn,*
    804 S.W.2d 463 (Tex. 1990) .......................................................... 42

*Reyna as next friend of J.F.G. v. Hott,*
    921 F.3d 204 (4th Cir. 2019) ........................................................ 28

*Rhodes v. Chapman,*
    452 U.S. 337 (1981) ......................................................................... 33

*Rinaldi v. United States,*
    904 F.3d 257 (3d Cir. 2018).......................................................... 33

*Rodriguez v. H.E. Butt Grocery Co., L.P.,*
    No. 13-20-00467, 2021 WL 4597106
    (Tex. App.—Corpus Christi Oct. 7, 2021, no pet.)................... 41

*Roma v. United States,*
    344 F.3d 352 (3d Cir. 2003)................................................... 14, 15

*S.E.B.M. v. United States,*
    659 F. Supp. 3d 1249 (D.N.M. Mar. 6, 2023) ......................... 30

*Santana-Rosa v. United States,*
    335 F.3d 39 (1st Cir. 2003)............................................................ 21

*Shayesteh v. Att'y Gen. U.S.,*
    627 F. App'x 70 (3d Cir. 2015) ..................................................... 7

*Shelton v. Bledsoe,*
    775 F.3d 554 (3d Cir. 2015)........................................................... 14

*Silcott v. Oglesby,*
    721 S.W.2d 290 (Tex. 1986) .......................................................... 43

*Sloan v. H.U.D.,*
    236 F.3d 756 (D.C. Cir. 2001) ...................................................... 23

*Smith v. United States,*
    No. 11-cv-616, 2014 WL 4638918 (S.D. Ohio Sept. 16, 2014)................................. 23

*Temple-Inland Forest Prods Corp. v. Carter,*
    993 S.W.2d 88 (Tex. 1999) ........................................................... 39

*Tovar v. United States,*
    2000 WL 425170 (N.D. Tex. Apr. 18, 2000) ............................................................ 44

*Tripp v. United States,*
    257 F. Supp. 2d 37 (D.D.C. 2003) .......................................................................... 40

*Twyman v. Twyman,*
    855 S.W.2d 619 (Tex. 1993) .......................................................................... 36, 45

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.,*
    839 F.3d 242 (3d Cir. 2016) .................................................................................. 12

*United States v. Bein,*
    214 F.3d 408 (3rd Cir. 2000) ................................................................................. 13

*United States v. Dominguez-Portillo,*
    Nos. 17-4409, 17-4455, 17-4461, 17-4462, 17-4499, 2018 WL 315759
    (W.D. Tex. Jan. 5, 2018) ....................................................................................... 5

*United States v. Gaubert,*
    499 U.S. 315 (1991) ....................................................................................... 18, 19

*United States v. Sherwood,*
    312 U.S. 584 (1941) ............................................................................................. 14

*United States v. Testan,*
    424 U.S. 392 (1976) ............................................................................................. 13

*Van Dinh v. Reno,*
    197 F.3d 427 (10th Cir. 1999) .............................................................................. 19

*Van Horn v. Chambers,*
    970 S. W. 2d 542 (Tex. 1998) ............................................................................... 40

*Verinakis v. Med. Profiles, Inc.,*
    987 S.W.2d 90 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ................... 42

*Villafranca v. United States,*
    587 F.3d 257 (5th Cir. 2009) ................................................................................ 43

*Villafuerte v. United States,*
    No. 16-619, 2017 WL 8793751 (S.D. Tex. Oct. 11, 2017) ..................................... 39

*Walding v. United States,*
    955 F. Supp. 2d 759 (W.D. Tex. 2013) ................................................................. 22

*Wal-Mart Stores, Inc. v. Canchola,*
121 S.W.3d 735 (Tex. 2003) ......................................................... 35

*Welch v. United States,*
409 F.3d 646 (4th Cir. 2005) ....................................................... 29

*Woosley v. United States Dist. Court,*
693 F. App'x 144 (3d Cir. 2017) ................................................. 12

*Xi v. Haugen,*
68 F.4th 824 (3d Cir. 2023) .......................................................... 24

### *Statutes*

6 U.S.C. § 279 ................................................................................... 6

6 U.S.C. § 279(a) .............................................................................. 6

6 U.S.C. § 279(b)(1)(A) .................................................................... 6

6 U.S.C. § 279(b)(1)(C) .................................................................... 6

6 U.S.C. § 279(g)(2) .............................................................. 7, 22, 30

8 U.S.C. § 1182(a)(7) .................................................................. 3, 16

8 U.S.C. § 1182(a)(9)(A)(i) ............................................................... 3

8 U.S.C. § 1182(d)(5)(A) .............................................................. 4, 17

8 U.S.C. § 1225(a)(1) ....................................................................... 3

8 U.S.C. § 1225(a)(3) ....................................................................... 3

8 U.S.C. § 1225(b)(1) ............................................................... 1, 3, 16

8 U.S.C. § 1225(b)(1)(B)(i) ............................................................... 3

8 U.S.C. § 1225(b)(1)(B)(iii) ................................................. 3, 40, 43

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ............................... 3, 17, 20, 37

8 U.S.C. § 1231(g)(1) .................................................................. 4, 19

8 U.S.C. § 1232 ................................................................................. 6

8 U.S.C. § 1232(a)(3) ........................................................ 7, 18, 37, 40

8 U.S.C. § 1232(b)(1) ............................................................................................ 6

8 U.S.C. § 1232(b)(3) ................................................................................... passim

8 U.S.C. § 1232(c)(2)(A) .................................................................. 7, 16, 22, 43

8 U.S.C. § 1252(a)(2)(B)(ii) ................................................................................ 4

8 U.S.C. § 1325............................................................................................ 25, 26, 27

8 U.S.C. § 1325(a) .............................................................................................. 10

28 U.S.C. § 1346(b) ................................................................................. 31, 34, 35

28 U.S.C. § 2401(b) ............................................................................................ 15

28 U.S.C. § 2675 ................................................................................................. 13

28 U.S.C. § 2675(a) ..................................................................................... 14, 15

28 U.S.C. § 2680............................................................................................ 2, 16, 17

28 U.S.C. § 2680(a) ............................................................................................ 28

## **_Rules_**

Fed. R. Civ. P. 12(b)(1)...................................................................................... 12

Fed. R. Civ. P. 12(h)(3) ...................................................................................... 12

## **_Regulations_**

28 C.F.R. § 14.2(c)............................................................................................. 15

## **_Other Authorities_**

H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.......................................... 29

Restatement (Second) of Torts ........................................................... 36, 43, 45

## PRELIMINARY STATEMENT

Plaintiff D.R.M. alleges that in March 2018, he and his minor son, Plaintiff J.J.R.S., traveled from their native Honduras to the United States to request asylum and obtain medical treatment for J.J.R.S.  Federal officers at the Hidalgo, Texas port of entry found Plaintiffs inadmissible.  Plaintiffs were not immediately removed, as their asylum request resulted in detention pursuant to 8 U.S.C. § 1225(b)(1) pending a credible fear interview.

At that time, U.S. Immigration and Customs Enforcement ("ICE") had a very limited capacity to detain family units with male heads of household and denied family detention placement for Plaintiffs.  That denial meant that ICE continued to detain D.R.M in a secure facility until his removal 45 days later, while U.S. Customs and Border Protection ("CBP") referred J.J.R.S. to the Office of Refugee Resettlement ("ORR") as an "unaccompanied alien child," in accordance with the Trafficking Victims Protection Reauthorization Act ("TVPRA").  ORR placed J.J.R.S. in a private foster care facility, where he received medical treatment for his heart condition that culminated in open heart surgery.  Plaintiffs were reunited in October 2018.

Plaintiffs now bring this suit under the Federal Tort Claims Act ("FTCA") to recover tort damages arising from their separation and the conditions of their detention.  They principally allege that their separation resulted from an unlawful Executive policy that required the criminal prosecution of all persons who crossed the United States border between points of entry, commonly known as the "Zero Tolerance Policy."  But the Zero Tolerance Policy was not effective yet in March 2018,

when Plaintiffs arrived at the Hidalgo port of entry, and the Zero Tolerance Policy, once it did launch, did not apply to Plaintiffs' circumstances anyway. Instead, it applied primarily to noncitizens who entered *between* the ports of entry, or who failed to present for inspection, or who attempted to enter via fraud or willful representation. That does not describe Plaintiffs here. Furthermore, the United States has sovereign immunity from Plaintiffs' FTCA claims for three reasons.

First, Plaintiffs failed to administratively exhaust several of their claims, including allegations related to their conditions of confinement and J.J.R.S.'s medical treatment. The FTCA conditions its waiver of sovereign immunity on the exhaustion of administrative remedies. So, the Court lacks subject matter jurisdiction over Plaintiffs' unexhausted claims and should dismiss them under Rule 12(b)(1).

Second, Plaintiffs' exhausted claims challenging their separation are barred by two exceptions to the FTCA's limited waiver of sovereign immunity: the "discretionary function" exception, which bars claims arising from a federal agency's exercise of a discretionary function; and the "due care" exception, which bars claims arising from an agency's exercise of "due care . . . in the execution of a statute." 28 U.S.C. § 2680. For these reasons, and several others discussed below, the Court also lacks subject matter jurisdiction over Plaintiffs' claims under these FTCA exceptions.

Third, Plaintiffs fail to state a claim upon which relief can be granted. FTCA claims are governed by the tort law of the state where the alleged conduct occurred, and Plaintiffs fail to state a viable tort claim under the governing Texas law, which in the context of the FTCA is jurisdictional.

# LEGAL FRAMEWORK

## I.    Statutory Framework for Noncitizens Arriving at U.S. Border

Under the Immigration and Nationality Act ("INA"), any noncitizen who arrives at the United States border is considered an "applicant for admission" and must submit to inspection by immigration officers.  8 U.S.C. § 1225(a)(1), (3).  If the immigration officer determines the noncitizen lacks proper documentation to enter the country and is thus inadmissible under 8 U.S.C. § 1182(a)(7), the noncitizen is subject to expedited removal; the officer must order the noncitizen removed "without further hearing or review" unless the noncitizen declares an intent to apply for asylum or a fear of persecution.  *Id.* § 1225(b)(1).  Similarly, any noncitizen who seeks admission within 5 years of a prior removal is inadmissible.  *Id.* § 1182(a)(9)(A)(i).

An asylum officer must interview any applicant for admission who requests asylum.  *Id.* § 1225(b)(1)(B)(i).  If the interviewing officer finds that the noncitizen "does not have a credible fear of persecution, the officer shall order the alien removed from the United States without further hearing or review," unless the noncitizen requests review by an immigration judge.  *Id.* § 1225(b)(1)(B)(iii).

"Whether an applicant who raises an asylum claim receives full or only expedited review, the applicant is not entitled to immediate release."  *DHS v. Thuraissigiam*, 591 U.S. 103, 111 (2020).  The INA provides that applicants for admission "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."  *Id.*; § 1225(b)(1)(B)(iii)(IV); *see also Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (The INA "mandate[s] detention of applicants for admission until certain [removal]

proceedings have concluded."). The federal government may, in its "discretion," temporarily grant parole and release such individuals "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Federal courts lack jurisdiction "to review the . . . exercise of discretion in decisions to grant or deny parole." *Ashish v. Att'y Gen. of U.S.*, 490 F. App'x 486, 487 (3d Cir. 2013); *see* 8 U.S.C. § 1252(a)(2)(B)(ii).

The federal government further possesses statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1).

## II.    The *Flores* Agreement Governing Minors in Immigration Detention

In 1996, the federal government entered into a settlement agreement referred to as the *Flores* Agreement[1] that "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Agreement ¶ 9). Under the *Flores* Agreement, the U.S. Department of Homeland Security ("DHS") must expeditiously transfer any minor who cannot be released from custody to a non-secure facility that is "licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children." *Id.* at 903 (citing *Flores* Agreement ¶¶ 6, 19).

The *Flores* Agreement applies only to minors. *See Flores*, 828 F.3d at 901. It "does not address . . . the housing of family units and the scope of parental rights for

---

[1] *See Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF No. 101).

adults apprehended with their children," and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id.* at 906; *see also United States v. Dominguez-Portillo*, Nos. 17-4409, 17-4455, 17-4461, 17-4462, 17-4499, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]"). Nor does the *Flores* Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14–15; *Bunikyte v. Chertoff*, Nos. 07-164, 07-165, 07-166, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). Although the *Flores* Agreement gives preference to release of minors to a parent, this "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

### III.    ICE's Capacity to Detain Family Units in March 2018

The *Flores* Agreement's prohibition on detaining minors in secure facilities, along with other practical constraints, limited ICE's capacity to detain family units together in March 2018 (when Plaintiffs entered the United States). At that time, ICE oversaw three family residential centers ("FRCs") designed to comply with the requirements of the *Flores* Agreement and ICE's Family Residential Standards. Declaration of Byoung Park ("Park Decl.") ¶¶ 5, 6. A FRC is a non-secure facility that permits parents and children to live in a dormitory-like setting with access to education, recreational opportunities, and health care on site. *Id.* ¶ 6. Family units were free to move throughout the FRC or even leave the facility. *Id.* ¶¶ 7, 12. Each FRC was also subject to State licensing requirements and inspections. *Id.* ¶ 11.

5

Due to the unique nature of non-secure family detention, each FRC maintained strict admission requirements designed to ensure the safety of its family residents. *Id.* ¶¶ 8–9, 13–14. As relevant here, only one FRC operating in March 2018 accepted male head-of-household family units, such as Plaintiffs': Berks FRC in Pennsylvania. *Id.* ¶ 14. According to ICE, "[i]t is generally challenging to house males at FRC facilities because adult and adolescent males present a greater security threat than females and children;" and, thus "a facility that permits fathers must provide additional oversight of detainees and a greater ability to control movement." *Id.* ¶ 16.

Berks FRC housed non-criminal residents, and, on a limited case-by-case basis, could consider exceptions for individuals with only non-violent minor offenses. *Id.* ¶ 8. However, Berks FRC was limited to 96 residents and often had no available bed spaces to accept male head-of-household family units. *Id.* ¶ 14.

## IV. Statutory Framework for Housing Unaccompanied Noncitizen Minors

Federal law requires the United States to provide for the custody and care of noncitizen minor children without an available parent or legal guardian to provide such care and custody. *See* 6 U.S.C. § 279; 8 U.S.C. § 1232. ORR, an agency within the U.S. Department of Health and Human Services ("HHS"), is responsible for "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian

in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Additionally, the TVPRA requires that "[e]xcept in the case of exceptional circumstances, any department or agency of the Federal Government that that has an unaccompanied [noncitizen] child in custody shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is [an unaccompanied noncitizen child]." 8 U.S.C. § 1232(b)(3); *see also* 8 U.S.C. § 1232(a)(3). ORR must then "promptly place[]" UACs "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff D.R.M. and his son, Plaintiff J.J.R.S., are Honduran nationals who currently reside in Dunellen, New Jersey. Compl. ¶¶ 19, 21. Plaintiffs generally allege that after they entered the United States in March 2018, immigration officials detained and separated them. *Id.* ¶¶ 98–123. Plaintiffs also claim that immigration officials imposed poor conditions of confinement and provided inadequate medical treatment to J.J.R.S. during their detention. *Id.* ¶¶ 174–76, 178.

Plaintiffs' interactions with immigration officials were documented in contemporaneous government records, including Forms I-213, Record of Deportable/Inadmissible Alien.[2] The Court may consider this material in reviewing

---

[2] "An I–213 form documents the arrest of an alien unlawfully present in the United States. In addition to the circumstances of the arrest, the form contains the name, alien number, address, date of birth, photograph, fingerprints, criminal and immigration history, and other information about the arrestee." *Shayesteh v. Att'y Gen. U.S.*, 627 F. App'x 70, 72 (3d Cir. 2015) (citation omitted).

a factual attack under Federal Rule of Civil Procedure 12(b)(1) even if the material is extrinsic to the Complaint.  *See infra* pp. 12–13.

## I.  <u>Plaintiffs' 2018 Entry at the Hidalgo Port of Entry</u>

Plaintiffs allege that they entered the United States near Hidalgo, Texas, on March 16, 2018, turned themselves in to U.S. immigration officials, and requested asylum.  Compl. ¶¶ 98–99.  ██████████████████████████

████████████████████████████████████████████

████████████████████████  Declaration of Rodney Harris ("Harris Decl.") ¶¶ 4–6.

D.R.M. allegedly told officers that his son J.J.R.S. had a heart condition and that they traveled to the United States to seek emergency treatment for J.J.R.S. Compl. ¶ 100.   Plaintiffs claim the officers searched them, found J.J.R.S.'s heart medication, furosemide, and threw the furosemide in the trash.  *Id.* ¶ 101.

Subsequently, the officers allegedly brought J.J.R.S. to the McAllen Medical Center in McAllen, Texas, for a medical examination.  *Id.* ¶ 102.  Once at the facility, Plaintiffs state that medical staff at the McAllen Medical Center incorrectly diagnosed J.J.R.S. with a heart murmur and advised that J.J.R.S. should continue taking previously prescribed medications.  *Id.* ¶¶ 102–03.  However, Plaintiffs allege that J.J.R.S. never received a replacement for his furosemide.  *Id.* ¶ 104.  The federal government does not operate McAllen Medical Center, *see* Harris Decl. ¶ 13, and Plaintiffs do not allege otherwise.

After J.J.R.S.'s release from the medical center, Plaintiffs allege that immigration officers held them in a cold holding cell with inadequate food and drink.

Compl. ¶¶ 108–110.  Several days later, officers allegedly separated Plaintiffs.  *Id.*
¶¶ 115–16.  ████████████████████████████████████████████████████

████████████████████████████ :



Harris Decl. Ex. A, at 3–4.  D.R.M. alleges he was transferred to another detention
center and removed to Honduras approximately 45 days later.  Compl. ¶¶ 119, 121.

Meanwhile, Plaintiffs allege that J.J.R.S. was placed into a foster care facility
called Leake and Watts from March to October 2018, during which time he allegedly
received medical care for his heart condition, culminating in open heart surgery.  *Id.*
¶¶ 126–140, 151.  Plaintiffs do not allege that the federal government operated Leake
and Watts.

In September 2018, D.R.M. received humanitarian parole into the United
States.  *Id.* ¶ 141.  Plaintiffs were reunified in October 2018.  *Id.* ¶¶ 151–52.

## II.    The "Zero Tolerance" Policy for Violations of 8 U.S.C. § 1325(a)

As discussed above, Plaintiffs entered the country at a port of entry in March
2018.  Their Complaint, however, focuses on an alleged policy related to unlawful
crossings *between* ports of entry that the Attorney General implemented *after* March
2018.  *See* Compl. ¶¶ 43–56.  Specifically, Plaintiffs allege that their separation
stemmed from a "Zero Tolerance Policy" to refer all suspected violations of illegal

entry under 8 U.S.C. § 1325(a) for prosecution.  That statute makes it a crime for any noncitizen to "(1) enter[] or attempt[] to enter the United States at any time or place other than as designated by immigration officers;" (2) "elude[] examination or inspection by immigration officers;" or (3) attempt[] to enter or obtain[] entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact."

The alleged "Zero Tolerance Policy" is a reference to an April 6, 2018, memorandum issued by the former Attorney General, entitled "Memorandum for Federal Prosecutors along the Southwest Border."[3]  The memorandum directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS—to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." *Id.*  Plaintiffs allege that as a result of this policy "[t]he government designated every family unit adult who crossed the border between ports of entry as amenable for prosecution," which in turn "rendered their children 'unaccompanied' and subject to 8 U.S.C. § 1232(b)(3)'s custodial-transfer," leading to family separation. *Id.* ¶¶ 50–51.

Though Plaintiffs acknowledge that their separation occurred before the federal government announced and implemented the Zero Tolerance Policy, they allege that an earlier-implemented "pilot program" with similar goals resulted in their separation. *See, e.g., id.* ¶¶ 42–43. According to Plaintiffs, "[b]eginning in July

---

[3]  U.S.  DOJ, *Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a)*, https://www.justice.gov/archives/opa/press-release/file/1049751/dl?inline (last visited July 15, 2025) ("Zero-Tolerance Memo").

2017," CBP "implemented new policies that resulted in . . . families being separated" in the CBP's El Paso sector. *Id.* ¶ 30. They also allege that "[b]etween late 2017 and early 2018," ORR noted an increase in family separation in Texas and Arizona. *Id.* ¶ 36. The El Paso sector, however, does not include the Hidalgo port of entry where Plaintiffs entered the United States. *See* CBP, El Paso Sector Texas, https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/el-paso-sector-texas (last visited July 15, 2025).

### III.   <u>Plaintiffs Administrative Claims and Procedural History</u>



Plaintiffs filed this suit in January 2025. ECF No. 1. The Complaint alleges several claims under the FTCA: (1) intentional infliction of emotional distress through the implementation of a nationwide policy designed to separate families, Compl. ¶¶ 24–90, 163, 167–71; (2) six claims of negligence arising from Plaintiffs' alleged separation, medical treatment, and conditions of confinement, *id.* ¶¶ 174–79; (3) loss of consortium, *id.* ¶¶ 183–87; and (4) tortious interference with familial relationship arising from Plaintiffs' separation, *id.* ¶¶ 188–92.

The United States now moves to dismiss the Complaint under Rule 12(b)(1).

## STANDARD OF REVIEW

A court must dismiss any action or claim that it lacks subject matter jurisdiction to hear.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).  In general, Plaintiffs have the burden to establish the court's jurisdiction.  *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009).  But "the United States has the burden of proving the applicability of the discretionary function exception" to the FTCA.  *Karkalas v. Marks*, 845 F. App'x 114, 121 (3d Cir. 2021) (quotations omitted).  The court may dismiss for lack of subject-matter jurisdiction at any time regardless of whether an answer to the complaint has been filed or the parties have conducted discovery. *CNA v. United States*, 535 F.3d 132, 145–46 (3d Cir. 2008).

Rule 12(b)(1) permits either a "facial or factual" challenge to jurisdiction. *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citation and quotations omitted).  In a facial challenge, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  However, even when a facial challenge to jurisdiction is brought, the Court may still consider public documents and websites. *See, e.g.*, *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 89 n.10 (3d Cir. 2016); *Woosley v. United States Dist. Court*, 693 F. App'x 144, 147 (3d Cir. 2017).

In considering a factual challenge to subject-matter jurisdiction, the Court is not bound by the allegations in the complaint and "may consider evidence outside the pleadings." *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*,

839 F.3d 242, 251 (3d Cir. 2016). Furthermore, "[t]he presumption of truth does not extend to" a factual attack on jurisdiction "'and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Courts v. United States*, No. 15-7303 (MLC), 2016 WL 4521687, at *3 (D.N.J. Aug. 29, 2016). The proper mechanism to weigh evidence on a factual attack is Rule 12(b)(1), rather than Rule 56. *See CNA*, 535 F.3d at 145.

## LEGAL ARGUMENT

### I.    The Court Lacks Subject Matter Jurisdiction Under The FTCA

#### A.    Plaintiffs Failed to Exhaust Their Medical-Malpractice and Conditions-of-Confinement Claims

As a threshold matter, the Court should dismiss all negligence and loss of consortium claims in Counts II and III that Plaintiffs failed to exhaust pursuant to 28 U.S.C. § 2675. ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ But the Complaint brings additional negligence claims of a completely different character, which the relevant agencies had no opportunity to investigate. The Court lacks jurisdiction over these unexhausted claims.

As sovereign, the United States is immune from suit unless it specifically and expressly consents to suit. *Lehman v. Nakshian*, 453 U.S. 156, 160–61 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). Any waiver is strictly construed in favor of the United States. *United States v. Bein*, 214 F.3d 408, 412 (3rd

13

Cir. 2000). Where there is no waiver, the Court lacks subject matter jurisdiction to entertain a claim. *United States v. Sherwood*, 312 U.S. 584, 590–91 (1941).

The FTCA expressly conditions its limited waiver of sovereign immunity on compliance with the statute's procedural mechanisms, including the exhaustion of administrative remedies. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Among other things, a plaintiff must, prior to bringing suit, file an administrative tort claim and wait until either the agency denies the claim or six months have passed without resolution. *See* 28 U.S.C. § 2675(a). A failure to satisfy this requirement deprives the court of subject matter jurisdiction and cannot be waived. *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015). And because this requirement is jurisdictional, Plaintiff bears the burden to allege exhaustion. *Medina v. City of Philadelphia*, 219 F. App'x 169, 172 (3d Cir. 2007).

Importantly, "[a] plaintiff may not 'present one claim to the agency and then maintain suit on the basis of a different set of facts.'" *Floyd v. United States*, No. 22-1229 (RMB), 2024 WL 3064671, at *4 (D.N.J. June 20, 2024) (quoting *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003)). The claimant must "(1) give[] the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) place[] a value on his or her claim." *Roma*, 344 F.3d at 362–63.

Here, █████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

In contrast to the administrative claims, the Complaint alleges that the United States breached duties owed to Plaintiffs in several different ways.  In addition to separation claims, *see* Compl. ¶¶ 177, 179, Plaintiffs allege the United States breached additional duties of care by:

- "throwing out J.J.R.S.'s medication (furosemide) despite being told that he had a serious heart condition and despite medical providers' instruction that J.J.R.S. should continue taking his medication," *id.* ¶ 174;

- "refusing to provide J.J.R.S. with prompt medical attention despite being told that he had a serious heart condition," *id.* ¶ 175;

- "sending J.J.R.S. to a foster care facility without notifying [the facility] of J.J.R.S.'s serious heart condition," *id.* ¶ 176; and

- "subjecting Plaintiffs to inhumane detention conditions prior to their separation," *id.* ¶ 178.

Plaintiffs did not present any of these claims through the administrative process and so did not provide "written notice . . . sufficient to enable the agency to investigate." *Roma*, 344 F.3d at 362.  The time to do so has long expired.  *See* 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues"); 28 C.F.R. § 14.2(c) (providing that an administrative claim must be amended "prior to final agency action or prior to the exercise of the claimant's option [to file suit] under 28 U.S.C. 2675(a)").

Accordingly, the Court lacks subject matter jurisdiction over tort claims arising from the unexhausted allegations detailed above. *See, e.g.*, *Floyd*, 2024 WL 3064671,

at *4–6 (partially dismissing FTCA claim to the extent it relied on unexhausted factual allegations). The Court should dismiss Counts II (negligence) and Count III (loss of consortium) insofar as they arise from the claims asserted in paragraphs 174–176 and 178 of the Complaint.

## B. The Discretionary Function and Due Care Exceptions to the FTCA Bar Plaintiffs' Exhausted Claims

Plaintiffs' only exhausted claims relate to their separation at the border. *See* Curl Decl. Ex. A; Compl. ¶¶ 24–90, 163, 168, 177, 190.   That separation occurred after D.R.M. was placed in expedited removal and detention under 8 U.S.C. §§ 1182(a)(7), 1225(b)(1), and ICE made the discretionary decision to deny family-unit detention at Berks FRC, which had limited capacity.  *See* Park Decl., ¶¶ 7–9, 13–17; *see also* Harris Decl. Ex. A, at 3–4.  Because of D.R.M.'s continuing, mandatory detention, and in accordance with governing legal obligations, CBP designated J.J.R.S. as an unaccompanied alien child, and placed him in the "least restrictive setting that is in the best interest of the child."  8 U.S.C. § 1232(c)(2)(A).  The Court lacks jurisdiction over claims arising from these events under the discretionary function and due care exceptions to the FTCA.

The FTCA's limited waiver of sovereign immunity contains express exceptions that "are designed to protect certain important governmental functions and prerogatives from disruption." *Molzof v. United States*, 502 U.S. 301, 311 (1992).  The "discretionary function" exception bars claims "based upon" the performance of "a discretionary function or duty . . . , whether or not the discretion involved be abused." 28 U.S.C. § 2680.  And the "due care" exception bars tort claims "based upon" a federal

employee's conduct, "exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." *Id.*

Because these exceptions to the FTCA implicate the United States' sovereign immunity, and thus the Court's subject matter jurisdiction, the United States may submit evidence extrinsic to the Complaint on a motion to dismiss through a Rule 12(b)(1) factual attack. The Court may weigh evidence and make factual findings, "regardless whether . . . the opposing party had an opportunity to conduct discovery." *CNA*, 535 F.3d at 145–46. "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Courts*, 2016 WL 4521687, at *3.

When Plaintiffs were found inadmissible at the Hidalgo port of entry and requested asylum, the INA provided that they "shall be detained pending a final determination of credible fear of persecution." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). While DHS had "discretion" to temporarily grant parole only "on a case-by-case basis for urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A), Plaintiffs do not allege they applied for a discretionary grant of parole. The validity of Plaintiffs' initial detention is therefore undisputed (and in any event, Plaintiffs did not exhaust a claim arising from their initial detention, *see* Curl Decl. Ex. A).

Instead, Plaintiffs assert claims arising from their separation while already in custody. That separation was "based upon" three discrete decisions by federal employes that fall into the above FTCA exceptions. ***First***, ███████████████

███████████████████████████████████████████████

17

██████████████████████████████████████████████████████

██████████████████████████████ Compl. ¶¶ 115–121;

Harris Decl. ¶¶ 10–11.  **_Second_**, following the denial of family detention, Plaintiffs were separated while in CBP custody, and CBP made the statutorily required decision to transfer J.J.R.S. to ORR as an "unaccompanied alien child."  Harris Decl. ¶ 12; *see* 8 U.S.C. § 1232(b)(3); *see also* 8 U.S.C. § 1232(a)(3).  **_Third_**, ORR made the discretionary decision to place J.J.R.S. in a foster facility.  Compl. ¶ 126.  The discretionary function exception bars claims based upon the decisions to deny family detention and select a foster care facility.  The due care exception bars claims based upon the intervening, statutorily required, decision to transfer J.J.R.S. to ORR.

Plaintiffs further allege that the government failed to "develop and implement a system" to track the existence of D.R.M.'s relationship with J.J.R.S., which limited the information available to D.R.M. and Plaintiffs' ability to communicate.  Compl. ¶¶ 32, 179.  Insofar as that claim is distinct from those challenging the separation itself, it is also barred by the discretionary function exception.

1.    The Discretionary Function Exception Bars Plaintiffs' Family-Placement Claim

The discretionary function exception to the FTCA bars Plaintiffs' family-placement claim. A two-part test determines if the discretionary function exception applies. *United States v. Gaubert,* 499 U.S. 315, 328–32 (1991).  If both prongs of the test are met, the court lacks subject matter jurisdiction. *See  Baer v. United States*, 722 F.3d 168, 175 (3d Cir. 2013). First, courts must ask whether the conduct "involves an 'element of judgment or choice.'" *Merando v. United States*, 517 F.3d 160 (3d Cir.

2008) (quoting *Gaubert*, 499 U.S. at 322).  Second, the court must also find that "the judgment is of the kind that the discretionary function exception was designed to shield." *Merando*, 517 F.3d at 165 (quotation marks omitted).  The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325.

Here, ICE's decision to deny family detention, CBP's decision to process D.R.M. for "Expedited Removal with Credible Fear/Detained," and ORR's decision to select a foster facility for J.J.R.S. satisfy both of these prongs.  Plaintiff's claim that the United States failed to "track" their relationship also squarely implicates discretionary functions, and so falls outside the FTCA.

a.    *Plaintiffs' Family-Detention Claim Fails.*

ICE's decision to deny family detention to Plaintiffs involved an "element of judgment or choice," because the federal government has broad statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."  8 U.S.C. § 1231(g)(1).  Indeed, "Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Executive]." *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986); *see also Gandarillas- Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that "Attorney General's discretionary power to transfer aliens from one

locale to another, as she deems appropriate, arises from" statute). Moreover, as discussed below, Plaintiffs cannot show that a mandatory Executive policy or unconstitutional conduct removed ICE's discretion in this case. *Infra* pp. 24–28.

Next, the court must examine the nature of the actions taken and whether they are susceptible to policy analysis. And decisions to grant or deny family detention are replete with policy considerations. As detailed above, the INA stated that Plaintiffs "shall be detained," 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), but the *Flores* Agreement required ICE to transfer J.J.R.S. to a non-secure facility. So federal officers in theory had two options within their discretion based on the circumstances alleged by Plaintiffs: (1) hold Plaintiffs together in a non-secure Family Residential Center that complied with the *Flores* Agreement; or (2) continue to hold D.R.M. in a secure facility while making separate arrangements for J.J.R.S.

████████████████████████████████████████████

██████████████████████████████████████ During March 2018, ICE's capacity for detaining family units with a male head of household was limited to a single facility (Berks FRC) that had only 96 residents and often lacked available bedspace. *See* Park Decl., ¶¶ 7–9, 13–14, 17. ICE's discretionary decision to deny family detention placement in that environment implicates numerous factors susceptible to a policy analysis, including: (1) what resources to designate towards the construction and maintenance of FRCs, and in what manner; (2) how to allocate the limit bedspace at FRCs; and (3) how best to ensure the safety of FRC residents, including through eligibility requirements.

Accordingly, courts regularly hold that decisions regarding detention placement are protected by the discretionary function exception. *See, e.g.*, *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("assignment to particular institutions or units . . . must be viewed as falling within the discretionary function exception to the FTCA"); *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions where to place prisoners are policy-based decisions protected by discretionary function exception); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (decisions whether to detain or release are policy-based decisions protected by discretionary function exception); *Peña Arita v. United States*, 470 F. Supp. 3d 663, at 691–92 (S.D. Tx. 2020) (decisions by DHS to separate family members are protected by the discretionary function exception).

More specifically, courts have held that immigration officials have the discretion to separate families detained at the border—especially where, as discussed below, no mandatory policy required that separation. *See K.O. v. United States*, No. 20-12015, 2023 WL 131411, at *7 (D. Mass. Jan. 9, 2023) ("Even though the TVPRA does not *mandate* family separation, as discussed above in the DCE analysis, it does not *forbid* family separation, at least after the government has taken some separate action against a parent and there is no available non-detained parent in the country." (emphasis in original)); *D.J.C.V. v. United States*, 687 F. Supp. 3d 423, 448–49 (S.D.N.Y. 2023) (holding that discretionary function exception barred FTCA claims arising from alleged family separation in early May 2018 that occurred independently

of the Zero Tolerance policy); *but see B.Y.C.C. v. United States,* No. 22-6586, 2023 WL 5237147, at *8 (D.N.J. Aug. 15, 2023) (rejecting application of DFE for claims where, unlike here, "all actions taken against Plaintiffs … stem[med] from the [Zero Tolerance] Policy."). Consistent with those decisions, this Court should hold that ICE's denial of Plaintiffs' family detention and CBP's determination to process D.R.M. for detention fall within the discretionary function exception.

      b.    *Plaintiffs' Foster-Care-Placement Claim Fails.*

Once ICE made the discretionary decision to deny family detention for Plaintiffs, CBP detained D.R.M. in a secure facility and processed J.J.R.S. as an "unaccompanied alien child." *See* 6 U.S.C. § 279(g)(2). In turn, that triggered the mandatory duty to transfer J.J.R.S. into ORR custody, as discussed further below. 8 U.S.C. § 1232(b)(3).

Following that transfer, the TVPRA required ORR to "promptly place[]" J.J.R.S. "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). Courts have recognized that "[i]t is clear that the ultimate choice of facility for housing unaccompanied alien children is a decision vested with policy considerations." *Walding v. United States*, 955 F. Supp. 2d 759, 771–72 (W.D. Tex. 2013). Accordingly, the discretionary function exception also shields ORR's decision to place J.J.R.S. in a foster care facility.

      c.    *Plaintiffs' Tracking-System Claim Fails.*

The discretionary function exception also bars Plaintiffs' allegation that the government negligently failed to "develop and implement a system" to track the existence of D.R.M.'s relationship with J.J.R.S., which Plaintiffs allege hindered

communication between them.  Compl. ¶¶ 32, 179.  As an initial matter, this claim arises directly from immigration officials' discretionary decision to separate Plaintiffs and is barred by the discretionary function exception for the same reasons.  *See Sloan v. H.U.D.*, 236 F.3d 756, 762 (D.C. Cir. 2001) (claims that are "inextricably tied" or "inextricably linked" to the conduct protected by section 2680(a) are also barred).

Additionally, Plaintiffs' tracking-system claim is directed to a policy judgment within agency discretion: Plaintiffs allege that the government failed to select a policy that prioritized the development of a tracking system over other limited resources. The FTCA does not permit a tort challenge with respect to how an agency chooses to "distribute its finite resources." *Mitchell v. United States*, 225 F.3d 361, 364 (3d Cir. 2000) (holding National Park Service neglected to reconstruct and repair an area of roadway was barred by the discretionary function exception); *Newsham v. Transp. Sec. Admin.*, No. 08-105 (FLW), 2010 U.S. Dist. LEXIS 17496, at *23–*24 (D.N.J. Feb. 26, 2010) (holding Transportation Security Administration did not negligently establish its kenneling policy because, in part, it "accords with policy decision on how to allocate the [agency's] limited resources"); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer system that failed to reveal immigration status is protected by discretionary function exception); *Smith v. United States*, No. 11-cv-616, 2014 WL 4638918, *4 (S.D. Ohio Sept. 16, 2014) (design of computer system involved balancing user needs with limited resources and thus was shielded).

In other words, the discretionary function exception protects government decision-making regarding when, with what frequency, and the means to afford

communication between noncitizens in secure immigration detention and their separated children, which necessarily involves balancing various policy considerations, including accessibility and cost of communications, staffing and resource allocation. *See Calderon v. United States*, 123 F.3d 947, 951 (7th Cir. 1997) ("It is clear that balancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison involves considerations based upon public policy"); *Floyd v. United States*, No. 22-1229 (RMB), 2024 U.S. Dist. LEXIS 108865, at *36 (D.N.J. June 20, 2024) (challenge to Bureau of Prison's decision about how to quarantine inmates barred by the discretionary function exception because the agency's decision "required prison officials to set priorities to accommodate all the different risks posed to inmates and staff"); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

> d.     *Plaintiffs Cannot Overcome the Discretionary Function Exception Through Allegations of Unconstitutionality*

Plaintiffs do not allege constitutional violations in their Complaint, but they may seek to overcome the discretionary function exception by arguing that the decisions to deny family detention and place J.J.R.S. in a foster care facility were required by an unconstitutional policy. *See* Compl. ¶ 32 (alleging family separation and tracking failures were the intended result of a nationwide policy); *see also, e.g.*, *Xi v. Haugen*, 68 F.4th 824, 839 (3d Cir. 2023) ("[B]ecause government officials never have discretion to violate the Constitution, unconstitutional government conduct is

per se outside the discretionary function exception."); *B.Y.C.C.,* 2023 WL 5237147, at *8 (holding DFE did not apply to claims that family separation resulted from prescribed "course of action" dictated by policy of detaining all noncitizens who unlawfully crossed the border).

While courts analyzing different facts have found that argument persuasive, *see, e.g.*, Compl. ¶ 80 & n.63, it fails under the distinct circumstances presented here. That is because Plaintiffs cannot show that their separation resulted from any mandatory Executive policy. *See, e.g.*, *D.J.C.V.*, 687 F. Supp. 3d at 448–49 (holding DFE barred FTCA claims arising from alleged family separation in early May 2018 where evidence showed that it did not result from the Zero Tolerance Policy).

It is undisputed that Plaintiffs' entry and separation occurred in March 2018, prior to the announcement and implementation of the Zero Tolerance Policy. And as discussed below, Plaintiffs (1) fail to plausibly allege that a precursor to that policy applied to the Hidalgo port of entry in March 2018; (2) fail to plausibly allege that such a policy would have even applied to their situation; and (3) cannot rebut the Government's evidence suggesting that independent considerations led to separation (which the Court may consider on a Rule 12(b)(1) motion).

Plaintiffs broadly allege three facts that they claim show the existence of a policy to "prioritize the aggressive prosecution of misdemeanor charges of improper entry under 8 U.S.C. § 1325," that purportedly applied to the Hidalgo port of entry in March 2018. Compl. ¶¶ 31, 42. First, they allege that "[b]eginning in July 2017," CBP implemented policies in the El Paso sector—located on the opposite end of Texas from

Hidalgo—that resulted in families being separated. Compl. ¶ 30. Second, they note a December 2017 memo between DHS and the Department of Justice suggesting that those agencies were exploring policy options related to family separation. *Id.* ¶¶ 34–35. Neither of those facts support the inference that a policy applicable to the Hidalgo port of entry was already in effect by March 2018. Third, Plaintiffs allege that "[b]etween late 2017 and early 2018," ORR noted an increase in family separations throughout Texas and Arizona. *Id.* ¶ 36. But a nonlocalized increase in family separations (which would include the El Paso sector)—while perhaps "consistent with" the existence of a wider policy to increase prosecutions—does not move Plaintiffs' claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 557, 570.

Critically, even if such circumstantial allegations could sufficiently allege the existence of an Executive policy in effect in Hidalgo in March 2018, Plaintiffs do not plausibly allege that the policy would have applied ***to them***. Plaintiffs claim that beginning in July 2017, the government "prioritized the aggressive prosecution of misdemeanor charges of improper entry under 8 U.S.C. § 1325," and that as a result, "[t]he government designated every family unit adult who crossed the border between ports of entry as amenable for prosecution and separated the adults and children before any decision was made whether to actually prosecute." Compl. ¶¶ 28, 50; *cf.* Zero-Tolerance Memo (adopting "a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)").

████████████████████████████████████████████████████

████████████████████████████████████████████. *See* Harris Decl.

¶¶ 4–6.  While their request for asylum triggered statutory detention in lieu of immediate removal, it was not a violation of 8 U.S.C. § 1325.  Indeed, Plaintiffs do not allege, and there appears to be no evidence, that D.R.M. was ever deemed "amenable for prosecution" under § 1325.  So even if an Executive policy to detain all noncitizens who entered between ports of entry existed and assuming Plaintiffs could establish it was in place in Hidalgo, Texas, Plaintiffs have not alleged that it applied to their situation.

Finally, the Government's evidence suggests that factors independent of the Zero Tolerance Policy (or its alleged precursors)—namely, the limited bedspace available in non-secure FRCs for male head of household families—resulted in Plaintiffs' separation, as detailed above.  *See supra* pp. 20–22.

Critically, the fact that Plaintiffs' separation did not stem from the Zero Tolerance Policy (or a precursor) places it outside the scope of nonbinding authority suggesting that such policies violated a substantive due process right to family integrity, including the often-cited *Ms. L* decision.  *See, e.g.*, *Ms. L. v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149, 1166–67 (S.D. Cal. 2018) (holding that the implementation of a wide-spread government practice "to separate parents from their minor children in an effort to deter others from coming to the United States . . . 'shocks the conscience,'" as required to state a substantive due process claim).  Instead, Plaintiffs' claims fall within the government's well-established general

discretion with respect to the detention of noncitizens. *Supra* pp. 19–22; *see also, e.g.*, *D.J.C.V.*, 687 F. Supp. 3d at 448–49 (collecting cases); *cf. Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210 (4th Cir. 2019) (holding that as a general matter, there is no "substantive due process right to family unity in the context of immigration detention pending removal").

Thus, Plaintiffs' claims are barred by the discretionary function exception. Alternatively, if the Court finds that Plaintiffs' opposition to this motion raises a factual question as to the basis for Plaintiffs' separation (and thus the application of the discretionary function exception), the Government respectfully asks the Court to limit discovery to that jurisdictional question before further litigation proceeds, following the model of *D.J.C.V.*, 687 F. Supp. 3d at 426–27. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (holding that courts should "resolv[e] immunity questions at the earliest possible stage in litigation").

2.   <u>Plaintiffs' Claim Regarding the Transfer into ORR Custody Fails</u>.

As just discussed, the discretionary function exception prohibits the core of Plaintiffs' claims, i.e., the government's decisions to deny family detention and separate Plaintiffs.  Insofar as Plaintiffs independently challenge CBP's decision to transfer J.J.R.S. into the custody of ORR, the due care exception deprives the Court of subject matter jurisdiction.

The FTCA prohibits tort liability "based upon an act or omission of an employee of the government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). Thus, "[w]here government employees act pursuant to and in furtherance of regulations,

resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (barring claim arising out of "the enforcement of 'rules and regulations'"); *Welch v. United States*, 409 F.3d 646, 652–53 (4th Cir. 2005) (affirming dismissal of FTCA claims based on enforcement of statute under due care exception).

Among other things, the purpose of this "due care" exception is to prevent the testing "of the legality of statutes and regulations" through a tort action. *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective"); *see also see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"). Accordingly, where a government employee's actions are authorized by statute or regulation, the due care exception applies. *See Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979).

Here, the TVPRA requires the United States to "transfer the custody" of unaccompanied noncitizen children to the care of ORR "not later than 72 hours after" determining that there is no parent available to provide care and physical custody, absent "exceptional circumstances." 8 U.S.C. § 1232(b)(3). Once ICE made the discretionary decision to deny family detention for Plaintiffs, and CBP made the

decision to process D.R.M. for detention, J.J.R.S. became a UAC under the TVPRA. *See* 6 U.S.C. § 279(g)(2). The mere enforcement of the TVPRA's statutory command cannot form the basis of an FTCA claim against the United States.

The United States acknowledges that district courts have held that the "due care" exception did not immunize decisions to separate families based on an Executive policy that is "neither a statute nor a regulation." *See, e.g.*, *B.Y.C.C.*, 2023 WL 5237147, at *7 (collecting cases). Here, as discussed above, Plaintiffs' claims do not plausibly implicate any Executive policy. In any event, the United States does not contend that the due care exception extends to ICE's decision to deny family detention, or to ORR's selection of a foster care facility, but only to the intervening decision to transfer J.J.R.S. into ORR custody.

\* \* \*

In sum, the combined operation of the discretionary function and due care exceptions bar Plaintiffs' exhausted tort claims. *See, e.g.*, *S.E.B.M. v. United States*, 659 F. Supp. 3d 1249, 1271–75 (D.N.M. Mar. 6, 2023) (finding that the due care exception and discretionary function exceptions applied to the following conduct: (1) "[the plaintiff's] physical separation from her father"; (2) "her limited contact with her father while in government custody"; (3) "her placement in ORR custody"; and (4) "being made to wait 160 days before she was placed in her grandmother's care"). The Court should therefore dismiss the Complaint for lack of subject matter jurisdiction.

### C. Alternatively, the Court Should Dismiss Plaintiffs' Emotional Distress Claim Because the FTCA Does Not Authorize Systemic Tort Claims

Even if Plaintiffs had alleged that some version of the Zero Tolerance Policy applied to them (they have not), their claim for intentional infliction of emotional distress (Count I) is barred because it alleges a systemic claim based on an alleged government-wide intent to inflict emotional distress, rather than claims based on the acts of individual federal employees.

The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the United States for damages arising from certain torts committed by federal employees acting within the scope of their employment. *Lichtman v. United States*, 316 F. App'x 116, 120 (3d Cir. 2008) (citing 28 U.S.C. § 1346(b)). The plain language of 28 U.S.C. § 1346(b) requires a plaintiff to establish that the conduct of individual government employee(s) caused harm:

> [D]istrict courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of *any employee of the Government while acting within the scope of his office or employment* . . .

(emphasis added). The terms "person" and "employee of the government," as used in the FTCA, mean individuals and natural persons, not institutions or corporate entities. *Daniels v. United States*, No. 20-3893, 2021 WL 2327856, at *2 (E.D. Pa. June 1, 2021) (citing *Rayonier Inc. v. United States*, 352 U.S. 215 (1957)); *see also Adams v. United States*, 420 F.3d 1049, 1052–55 (9th Cir. 2005); *Ochran v. United States*, 117 F.3d 495, 506 (11th Cir. 1997).

Thus, "plaintiffs may not assert 'systemic' claims against the Government writ large," but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment, for whom the United States has assumed liability under the FTCA.  *B.Y.C.C.*, 2023 WL 5237147, at *8.

In *B.Y.C.C.*, a court in this District acknowledged this principle but held that family separation claims arising from "the actions of individual Government employees" could proceed.  *Id.*  Plaintiffs' emotional distress claim, however, does not allege that any individual officer or officers "intentionally inflict[ed] severe emotional distress" upon Plaintiff.  *Bill Wyly Dev., Inc. v. Smith*, 680 S.W.3d 679, 689 (Tex. App. 2023) (discussing IIED claim under Texas law, which applies here).   Indeed, the Complaint is unambiguous in its theory that the federal government at large implemented a nationwide "policy to intentionally inflict emotional distress on parents and children" through family separation.  Compl. ¶ 90; *see also id.* ¶ 1 ("This case concerns an unprecedented and inhumane government policy designed to intentionally ***and systematically*** separate asylum-seeking parents from their children.") (emphasis added); *id.* ¶ 56 ("The government made the express choice to intentionally cause parents and children extraordinary pain and suffering in order to accomplish its policy objectives.").

The FTCA's limited waiver of sovereign immunity does not encompass such "systemic," institutional tort claims or "generalized theories" of tortious conduct "asserted against the staff and employees of federal institutions as a whole." *Lee v. United States*, No. CV1908051PCTDLRDMF, 2020 WL 6573258, at *6 (D. Ariz. Sept.

18, 2020). The Court should therefore dismiss Plaintiffs' emotional distress claim (Count I) for lack of subject matter jurisdiction, as well as any other claim the Court interprets as applying to nationwide policy—as opposed to the acts of individual employees.

### D. Alternatively, Other FTCA Exceptions Bar Plaintiffs' Unexhausted Claims Arising From Their Alleged Conditions Of Confinement

As discussed above, Plaintiffs failed to exhaust any claims related to their conditions of confinement, and the Court lacks jurisdiction on that basis. But even if they had exhausted, exceptions to the FTCA preclude Plaintiffs' claims concerning their conditions of confinement.

#### 1. The Discretionary Function Exception Bars Plaintiffs' Conditions-of-Confinement Claim.

Courts have repeatedly held that the discretionary function exception applies to claims based on acts or omissions relating to "conditions of confinement" because the manner in which the government manages and operates its detention facilities involves discretionary decisions susceptible to policy considerations. *See, e.g., Rinaldi v. United States*, 904 F.3d 257, 273–74 (3d Cir. 2018) ("housing and cellmate assignments are of the kind that the discretionary function exception was designed to shield") (cleaned up); *Donaldson v. United States*, 281 F. App'x 75, 77 (3d Cir. 2008) ("Supreme Court authority underscores the principle that prison officials have discretionary power over the safety of the institutions they operate") (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981)); *Lackner v. United States*, No. 22-4951 (RMB), 2025 U.S. Dist. LEXIS 14623, at *26–27 (D.N.J. Jan. 28, 2025) (facilities' decisions regarding quarantine conditions subject to policy considerations).

Accordingly, the Court should dismiss all claims that are based on the alleged conditions of Plaintiffs' confinement.  *See* Compl. ¶ 178.

### 2. Plaintiffs' Conditions of Confinement Claim Is Barred to the Extent it Sounds in Constitutional Tort.

Plaintiffs' challenge to the conditions of their confinement is also barred because the FTCA does not authorize constitutional tort claims.  *FDIC v. Meyer,* 510 U.S. 471, 477–78 (1994).  As the Supreme Court explained in *Meyer*, a claim is actionable under the FTCA only if the United States would be liable as a "'private person' 'in accordance with the law of the place where the act or omission occurred.'"  *Id.* (quoting 28 U.S.C. § 1346(b)).  "A constitutional tort claim . . . could not contain such an allegation."  *Id.* at 477.  Accordingly, "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."  *Id.* at 478; *see also Lang v. Sauers*, 529 F. App'x 121, 124 (3d Cir. 2013) (recognizing "proper avenue of relief" for "claims regarding . . . conditions of confinement is a [constitutional tort] suit" under *Bivens*).

The only possible means to obtain money damages against federal officials for constitutional violations is under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1978), but Plaintiffs have not alleged such a claim here.  Thus, the Court should dismiss Plaintiffs' conditions of confinement claim.

## II. Plaintiffs Fail to State a Claim Under Texas Law, Depriving the Court of Jurisdiction

In addition to the several jurisdictional defects above, Plaintiffs fail to state a claim for intentional infliction of emotional distress, negligence, loss of consortium,

or tortious interference with familial relationships under Texas law.[4]  This deprives the Court of subject matter jurisdiction because "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback v. King*, 592 U.S. 209, 218 (2021); *accord DeMolick v. United States*, No. 22-1973, 2023 WL 3562979, at *2 (3d Cir. May 19, 2023) (affirming dismissal of FTCA claim for lack of jurisdiction where plaintiff failed to establish that United States owed duty of care). The Court should therefore dismiss Plaintiffs' claims under Rules 12(b)(1).[5]

## A.    Plaintiffs Fail to State an Intentional Emotional Distress Claim (Count I)

Under Texas law, a claim of intentional infliction of emotional distress requires a plaintiff to establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006) (citing *Hoffman-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) and *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003)).  A defendant's conduct satisfies

---

[4]    Under the FTCA, the applicable substantive law is the law of the place where the alleged tortious act or omission occurred.  28 U.S.C. § 1346(b).  Here, all the allegedly tortious conduct occurred in Texas, and as a result, Texas law governs the analysis of whether Plaintiffs can state a claim under Rule 12(b)(6).

[5]    To the extent the Court determines that Rule 12(b)(6) is applicable, Plaintiffs' claims fail for the same reasons as under Rule 12(b)(1). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Plaintiffs do not satisfy that standard under Texas law.

the second element only if it is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decent, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement (Second) of Torts § 46 cmt. d). "Meritorious claims for intentional inflictions of emotional distress are relatively rare precisely because most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous." *Suberu*, 216 S.W.3d at 796 (citing *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815 n.1 (Tex. 2005)). Recovery for intentional infliction of emotional distress must typically be based on circumstances that border on "serious criminal acts." *Creditwatch, Inc.*, 157 S.W.3d at 818. Plaintiffs cannot meet that high standard here.

### 1. Plaintiffs' Separation Was Not the Result of Any Policy.

At the outset, Plaintiffs' intentional emotional distress claim is premised on the allegation that the federal government "acted intentionally or recklessly through their implementation of [a] policy designed to cause "severe emotional distress." Compl. ¶¶ 168, 170; *see also id.* ¶¶ 1, 56, 90. But as discussed, Plaintiffs do not plausibly allege that their separation was the result of any purported policy; instead, their separation resulted from federal officials acting in a manner authorized by federal immigration law. *Supra* pp. 18–22. Accordingly, the premise of the intentional emotional claim is not plausibly alleged because Plaintiffs cannot show the government acted intentionally or recklessly towards Plaintiffs by implementing such a policy. The Court should dismiss Count I.

## 2.    Plaintiffs' Separation Was Not Extreme and Outrageous.

Plaintiffs' claim similarly fails because it is premised on the actions of federal officers performing their duties as permitted by law, which cannot constitute extreme and outrageous conduct.  *See Hart v. O'Brien*, 127 F.3d 424, (5th Cir. 1997) ("Conduct that is required or authorized by law cannot be extreme or outrageous" (applying Texas law)), *abrogated on other grounds* by *Kalina v. Fletcher*, 522 U.S. 118 (1997); *cf. Dillard Dep't Stores v. Silva*, 106 S.W.3d 789, 797 (Tex. App.—Texarkana 2003, pet. granted) (where probable cause exists for an arrest, the decision to initiate criminal proceedings "cannot constitute outrageous behavior"), *aff'd in part, mod. in part on other grounds*, 148 S.W.3d 370 (Tex. 2004).

As discussed above, when Plaintiffs applied for admission at the Hidalgo port of entry to request asylum and seek medical treatment for J.J.R.S., the INA provided that they "shall be detained" pending further proceedings.  *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  ████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████  *Supra* pp. 19–22.  ICE was then required to transfer J.J.R.S. to ORR, which made the discretionary decision to place J.J.R.S. into a transitional a foster care program for UACs.  *See* 8 U.S.C. § 1232(b)(3); *see also* 8 U.S.C. § 1232(a)(3).  Plaintiffs acknowledge that J.J.R.S. received significant medical treatment while in foster care, including diagnostic procedures and open-heart surgery.  Compl. ¶¶ 129, 131, 135,

137–39.  They further admit that J.J.R.S. was able to speak to his mother on the phone during his foster placement.  Compl. ¶ 127.

All of these actions arose from the decisions and conduct taken to enforce federal immigration law, which cannot be considered extreme or outrageous under Texas law.  Thus, the Court should dismiss the claim for IIED.

## B.     Plaintiffs Fail to State a Negligence Claim (Count II)

Plaintiffs' allegations related to their separation also fail to state a claim for negligence under Texas law.  The Court should therefore dismiss Count II.

### 1.     Texas Does Not Recognize a Claim for Negligent Infliction of Emotional Distress.

Plaintiffs claim that they were negligently subject to prolonged separation without their consent, Compl. ¶ 177, and that the government negligently failed to develop a system for tracking and facilitating communication between Plaintiffs, *id.* at ¶ 179.  They allege that they suffered "mental and emotional distress."  *Id.* ¶ 163.  But Texas law does not recognize negligent infliction of emotional distress claims, regardless of the severity of the alleged emotional distress that is suffered.  *See B.Y.C.C.*, 2023 WL 5237147, at *52 (citing *C.D.A. v. United States*, No. 21-0469, 2023 WL 2666064, at *23 (Mar. 28, 2023) (dismissing NIED claim under Texas law because such a claim is not recognized in Texas)*; see also Garza v. United States*, 881 F. Supp. 1103, 1108 (S.D. Tex. 1995) (noting that a plaintiff's layering of a general negligence claim on top of specific tort claims for assault and false arrest "sound[ed] suspiciously like an impermissible claim for negligent infliction of emotional distress") (*citing*

*Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993)).  Accordingly, the Court should dismiss Plaintiffs' claims for negligent infliction of emotional distress in Count II.

Even if the Court construes Count II as claims for general negligence, they still fail.  Texas law requires that a plaintiff show physical injury to succeed on such claims.  *See Temple-Inland Forest Prods Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex. 1999) (negligent breach of duty "is not a wrong for which mental anguish is compensable absent physical injury").  And Texas law distinguishes between physical injuries (cognizable) and physical manifestations of emotional distress (not cognizable). *See Chapa v. Traciers & Assocs.*, 267 S.W.3d 386, 397 (Tex. App. 2008). In *Villafuerte*, the court held that the detainee's alleged pain from prolonged exposure to extremely low temperatures, sleep deprivation, hunger, stomach aches, headaches, weakness, dizziness, and symptoms of trauma, depression, and anxiety were not physical injuries. *See Villafuerte v. United States*, No. 16-619, 2017 WL 8793751, at *10–11 (S.D. Tex. Oct. 11, 2017). Rather, these mental and emotional harms were insufficient to support a negligence claim. *See id.*; *see also Pelayo v. 24 Hour Fitness USA, Inc.*, No. 19-1747, 2019 WL 6686702, at *4 (S.D. Tex. Nov. 21, 2019) (dismissing the plaintiff's negligent undertaking claim because her injuries "involve[d] only mental anguish").  Plaintiffs' alleged mental and emotional distress is insufficient to state a negligence claim under Texas law, and so the Court should dismiss Count II.

### 2.    Plaintiffs Fail to Allege a Duty Related to Their Separation

The Court should also dismiss Plaintiffs negligence claims arising from their separation for failure to identify an applicable duty under Texas law.  To maintain a

negligence claim, a plaintiff must show "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Kristensen v. United States*, 993 F.3d 363, 368 (5th Cir. 2021); *D. Houston, Inc. v. Love*, 92 S.W. 3d 450, 454 (Tex. 2002). The existence of a duty is a threshold question of law. *Van Horn v. Chambers*, 970 S. W. 2d 542, 544 (Tex. 1998); *see also Tripp v. United States*, 257 F. Supp. 2d 37, 45 (D.D.C. 2003) ("Unless plaintiff can establish a duty under District law to keep employee records such as security clearance application forms confidential, she cannot state a claim for negligence under the FTCA.").

Here, however, Plaintiffs have failed to plausibly allege that their separation resulted from any actionable breach of duty. No state, including Texas, requires that law enforcement officials house children with parents that are lawfully detained. *Cf. Davis v. Carlson*, 837 F.2d 1318, 1318 (5th Cir. 1998) (denying mandamus and holding that Bureau of Prisons has "no clear duty—nor, indeed, any duty" to transfer a prisoner to a facility near his wife); *see also Rathod v. Barr*, No. 20-161, 2020 WL 1492790, at *5 (W.D. La. Mar. 5, 2020) (holding in habeas matter that noncitizen "does not have a right to be housed in any particular facility, nor does this court have the authority to order the ICE to house [a noncitizen] in any particular facility"). As discussed above, when Plaintiffs were found inadmissible at the Hidalgo port of entry and requested asylum, the INA provided that they "shall be detained pending a final determination of credible fear of persecution." 8 U.S.C. § 1225(b)(1)(B)(iii); *see also* 8 U.S.C. §§ 1232(a)(3), (b)(3). The federal government has no duty to refrain from enforcing federal law and, thus, cannot breach any state-law duty by doing so.

### 3. Plaintiffs Fail to State a Claim for Development of a Tracking System.

Insofar as Plaintiffs bring a distinct negligence claim alleging that the United States hindered communication between them "by failing to develop and implement a system to track the existence of [their] relationship," Compl. ¶ 179, Plaintiffs similarly fail to state a claim for relief for this tracking-system claim. Although Plaintiffs allege that D.R.M. "did not hear any news about J.J.R.S. and was unable to contact his partner" for twenty days, *id.* ¶ 21, they do not allege that the government failed to track J.J.R.S., or that Plaintiffs' reunification was delayed by this tracking system. Rather, they state that D.R.M. was transferred to a new facility on the same day that J.J.R.S. was transferred to ORR as an unaccompanied alien child. Compl. ¶¶ 117, 119. Limitations on personal communications are a natural consequence of D.R.M.'s transfer between detention facilities. Moreover, Plaintiffs' own allegations belie this claim: Plaintiffs state that J.J.R.S.'s mother communicated with him throughout his placement in foster care, Compl. ¶ 127, communicated with D.R.M. after his transfer to a new facility, *id.* at ¶ 120, and was reunited with J.J.R.S, *id.* at ¶¶ 142–43. Thus, the Court should dismiss this negligence claim.

### C. Plaintiffs Fail to State a Loss of Consortium Claim (Count III)

Texas "does not recognize claims for parental loss of consortium based on purely emotional harm." *Rodriguez v. H.E. Butt Grocery Co., L.P.,* No. 13-20-00467, 2021 WL 4597106, at *8 (Tex. App.—Corpus Christi Oct. 7, 2021, no pet.) (citations omitted); *see also B.Y.C.C. v. United States*, 2023 No. 22-6586, 2023 WL 5237147, at *52 (D.N.J. Aug. 15, 2023). "[T]o successfully maintain a claim for loss of parental

consortium resulting from injury to the parent child relationship, the plaintiff must show that the defendant physically injured the child's parent in a manner that would subject the defendant to liability." *Reagan v. Vaughn*, 804 S.W.2d 463, 467 (Tex. 1990); *see also Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 294 (Tex 1994). A claimant "may not recover for loss of consortium absent a physical injury that is serious, permanent and disabling." *Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 99 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (citing *Browning-Ferris Indus. Inc.*, 881 S.W.2d at 294). Importantly, loss of consortium does not include an element of mental anguish. *Reagan*, 804 S.W.2d at 467.

Here, Plaintiffs assert that their separation interfered with their capacity to interact with one another in a gratifying way. ECF No. 1 at ¶ 185. Although they pled that they suffered "severe, permanent, and disabling injuries," *id.* at ¶ 185, D.R.M. describes his injuries as "substantial trauma, loss of society, companionship, care, support, affection, and substantial damages." *Id.* ¶ 186. He has not pled that he was physically injured, and so Plaintiffs are unable to maintain a loss of consortium claim. Accordingly, the Court should dismiss Count III.

### D.    Plaintiffs Fail to State a Claim for Tortious Interference with Familial Relationships (Count IV)

Texas does not recognize a general "tortious interference with familial relationships" cause of action. *Hardy v. Mitchell*, 195 S.W.3d 862, 864 (Tex. App. 2006); *see also Helena Lab'ys Corp. v. Snyder*, 886 S.W.2d 767, 768 (Tex. 1994) (declining to recognize a "negligent inference with familial relationships" cause of action). Texas law recognizes a common law cause of action for child abduction when

someone, "'with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody.'" *See Silcott v. Oglesby*, 721 S.W.2d 290, 292 (Tex. 1986) (quoting Restatement (Second) of Torts § 700). But Plaintiffs cannot show that D.R.M. was legally entitled to J.J.R.S.'s custody at the time of separation. As described at length above, Plaintiffs' separation occurred after D.R.M. was placed in expedited removal and mandatory detention, 8 U.S.C. § 1225(b)(1)(B)(iii), at which time ICE made the discretionary decision to deny family-unit detention. Due to D.R.M.'s continuing, mandatory detention, CBP designated J.J.R.S. as an unaccompanied alien child, and placed him in the "least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). Plaintiffs' separation was thus authorized by federal law, and the Court should dismiss Count IV.

### E. Alternatively, All of Plaintiffs' FTCA Claims Fail Under Texas Law Because the Claims Challenge Privileged Conduct

The United States may, in an FTCA case such as this, invoke state law privileges as a defense to liability. *See Villafranca v. United States*, 587 F.3d 257 (5th Cir. 2009); *see also B.Y.C.C.*, 2023 WL 5237147, at *10 (recognizing government "is entitled to invoke state law privileges as a defense against FTCA claims"). And Texas law provides that actions which may otherwise subject a person to liability are not considered tortious if the conduct is privileged. *See Hinojosa v. City of Terrell*, Tex., 834 F.2d 1223, 1231 (5th Cir. 1988) (citing Restatement (Second) of Torts § 10, and W. Keeton, Prosser and Keeton on Torts 16 (5th ed. 1984)). This principle applies here because the conduct Plaintiffs challenge—the initial mandatory detention

43

pursuant to the INA and consequent separation and designation of J.J.R.S. as an unaccompanied alien child—was authorized under federal law.

*Tovar v. United States* illustrates this principle. No. 98-1682, 2000 WL 425170, at *6-7 (N.D. Tex. Apr. 18, 2000), *aff'd* 244 F.3d 135 (5th Cir. 2000). In that case, the district court considered the United States' liability under the FTCA for a claim of false imprisonment stemming from the plaintiff's immigration-related detention by INS agents, who were the predecessor to ICE agents. Regarding the United States' liability, the court looked to the legal authority under which the INS agents acted. *See id.* at *6. That authority was federal immigration law. And because the federal immigration statutes authorized the challenged conduct, the court held that the "INS acted under authority of law," and thus their conduct was privileged under Texas law. *See id.* at *7. The same conclusion applies here.

Judge Shipp in *B.Y.C.C.* rejected a privilege defense upon finding that the government "cite[d] no privileges relevant to Plaintiffs' claims," and because the cases the government relied upon in making the privilege argument involved claims of false arrest or imprisonment, which were not at issue in *B.Y.C.C. See* 2023 WL 5237147, at *10. But the defense of privilege under Texas law is not cabined to claims of false arrest, and it applies here to Plaintiffs' intentional tort and negligence claims. *See Mendez v. Poitevent*, 823 F.3d 326, 334 (5th Cir. 2016) (recognizing, under Texas law, "if conduct is privileged, then it is not tortious," while applying privilege defense of other intentional torts besides false arrest); *see also Andrade v. U.S.*, 116 F. Supp. 2d 778, 787–89 (W.D. Tex. 2000) (recognizing "Texas [law] has accorded privileges to its

44

law enforcement officers in the performance of their duties as officers," and under the FTCA, "the United states may invoke privileges available to state law enforcement officials," while applying privilege defense to claims of negligence).

Indeed, applying the privilege defense here is entirely consistent with the Restatement of Torts, which Texas courts apply for claims such as intentional infliction of emotional distress. *See* Restatement (Second) of Torts § 890 (setting out privileges defenses); *see also Twyman*, 855 S.W. 2d at 621–22 (adopting elements of intentional infliction of emotional distress based on Restatement (Second) of Torts § 46); Restatement (Second) of Torts § 46 Comment g (recognizing "conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances," and so the alleged tortfeasor "is never liable, for example, where he [or she] has done no more than to insist upon [enforcing] legal rights in a permissible way, even though he [or she] is well aware that such insistence is certain to cause emotional distress.").

In sum, because the challenged conduct in this case was authorized by federal law, the conduct was privileged under Texas law, and the United States has sovereign immunity from Plaintiffs' FTCA claims. *See, e.g., DeMolick*, 2023 WL 3562979, at *2. Thus, the Court should dismiss the Complaint for lack of subject matter jurisdiction.

## **CONCLUSION**

For the above reasons, the Court should dismiss Plaintiffs' Complaint in full.

Respectfully submitted,

ALINA HABBA
United States Attorney

By:    /s/ Angela Juneau
ANGELA JUNEAU
DAVID INKELES
TASHA BRANDT
ANDREW BOCCIO
Assistant United States Attorneys
*Attorneys for the United States*

Dated: July 18, 2025